# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| DANIEL J. GOLLA and CHRISTINA LOUISE GOLLA | CIVIL ACTION NO.06-2298 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF BOSSIER CITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before this Court is a Motion for Summary Judgment [Record Document 59], filed on behalf of the Defendants, the City of Bossier, Ken Michael Halphen, Rodney D. Harris, Kathy Powell, Larry Hawkins, Todd Hylbert, Kevin Little, James Stewart, Shane McWilliams, Cornell Williams, Wesley McGee, and St. Paul Fire and Marine Insurance Company.  Plaintiffs oppose this motion.  [Record Document 84].  For the reasons stated herein, Defendants' motion is **GRANTED.**

## FACTUAL BACKGROUND

On December 7, 2005, plaintiffs Daniel Golla and Christina Golla came to Bossier City, Louisiana to stay at the home of Mrs. Golla's brother, Michael James McDaniel. McDaniel's wife, Okie McDaniel, had surgery early that day, for what was suspected to be a rare and advanced stage of cancer that may have spread to the lymph glands.  Plaintiffs were concerned about her and came to care for McDaniel and his daughter, Helen McDaniel, while his wife remained in the hospital.  See Record Document 1, ¶ 25.  That evening after leaving the hospital, the Gollas and Mr. McDaniel gathered in the McDaniel's garage to have a few drinks, and eventually starting taking shots of tequila.  [C. Golla Dep., p. 58].  In the early morning hours of December 8, 2005, Mrs. Golla went next door and

began knocking on the door of Stephen Hunt's home.  When Hunt answered the door, Mrs. Golla asked him to call the police because "something was wrong with her brother." [Plaintiffs' Statement of Facts ("PSOF") ¶ 8, citing C. Golla Dep., p. 113].  She informed Hunt that four people were in the home next door and that she feared McDaniel was going to harm himself or others.  [Defendants' Statement of Facts ("DSOF") ¶ 2, citing Hunt Dep., p. 8-9].  Hunt called 911 and reported that a man next door was suicidal and that others in the home could be in danger as well.  [Hunt Dep., p. 8-9].

In response to the 911 call, three Bossier City police officers were dispatched to the scene.  Officer Rodney Harris was the first to arrive and immediately spoke to Helen McDaniel who was standing in the front yard.  Helen McDaniel told Officer Harris that she had been awakened by her aunt, Mrs. Golla, and told that her father was intoxicated and acting "weird," that he had put on his military uniform, and that he was talking about killing himself.  [Harris Aff. ¶ 5].  She also informed Officer Harris that, to her knowledge, there were no weapons inside the home.  Id. at ¶ 6.

Officer Harris then approached the front door of the residence where he was met by Christina Golla.  Mrs. Golla told Officer Harris that her husband was in the garage talking to her brother and indicated that her brother was suicidal.  [Harris DVD, beginning at 1:48:21].  When Officer Harris insisted on speaking to McDaniel himself and confirming that he was not a danger to himself or others, Mrs. Golla stated that McDaniel would "freak out" if he knew she had called the police.  She told Officer Harris that she was going to tell her brother that the neighbors called the police after hearing loud voices and that the officer was just there to make sure everything was ok.  Id.  Officer Harris followed Mrs.

Golla through the home to the garage door, where Mrs. Golla informed her husband and her brother of the officer's presence.

As Officer Harris moved into the garage, he heard someone say "no" and saw an individual rush to a location in the garage and bend over. According to Officer Harris, that individual, later identified as McDaniel, came up with a shotgun and pointed it at Officer Harris.[1]   [Harris Aff. ¶ 9].   In response, Officer Harris used deadly force and fired seven rounds at McDaniel.  Officer Harris called for emergency medical services and informed dispatch that shots were fired.  [Harris DVD, 1:50:07].

The facts occurring after the shooting are heavily disputed.  Officer Harris claims Daniel Golla was "intoxicated and belligerent," that he jumped up, began yelling and moving towards the officer.  [Harris Aff. ¶ 12].  Officer Harris instructed Mr. Golla to "get back," but after a brief delay, Mr. Golla became more agitated and continued screaming and cursing.  In contrast, Mr. Golla claims he remained seated after the shooting and that he never threatened Officer Harris.

Sergeant Kathy Powell, the second officer to arrive on the scene, found Officer Harris in the garage with a shotgun in one hand and his service weapon in the other. Officer Harris requested Mr. Golla be handcuffed and removed from the garage.  Officer Larry Hawkins arrived moments later and assisted Sgt. Powell in handcuffing Mr. Golla and escorting him to a patrol car.  [Powell Aff. ¶ 7-9].  Once placed in the patrol car, Officer Hawkins began asking Mr. Golla questions related to the events that took place inside the

---

[1]Daniel Golla denies seeing McDaniel retrieve the shotgun and point it at Officer Harris.  See Golla Aff. ¶ 4.  This factual dispute is irrelevant for purposes of this motion, however, as there are no claims before this Court arising from Officer Harris's use of deadly force against McDaniel.  But see, infra, n.4.

garage.  Mr. Golla claims he was not read any of his rights at this time.  [PSOF ¶ 27].
When asked what happened in the garage, Mr. Golla told Officer Hawkins "they shot him
like a dog."  [Hawkins Dep., p.73].

The Bossier City Fire Department arrived, provided emergency care to McDaniel,
and transported him to LSU Health Sciences Center ("LSUHSC") in Shreveport, Louisiana,
where he was later pronounced dead.  [DSOF ¶  12].  After McDaniel was transported to
LSUHSC, the Bossier City Police Department immediately began to secure the scene.
They identified and separated the witnesses, including the Gollas and Helen McDaniel, and
transported them to the Bossier City Police Department for further questioning.  [PSOF ¶
30; DSOF ¶ 13].  Upon their arrival at approximately 2:30 a.m., Officer Hawkins removed
Mr. Golla's handcuffs and each witness was placed in a separate interview room.  [PSOF
¶ 31-32; DSOF ¶ 14].  When Mr. Golla indicated he was claustrophobic, Officer Todd
Hylbert allowed Mr. Golla to accompany him to the patrol room and the sergeant's office
to complete paperwork.  [Hylbert Aff. ¶ 4].  When Mr. Golla became more comfortable,
Officer Hylbert returned him to the interview room.  Id.

Thereafter, according to defendants, Detective Shane McWilliams attempted to take
a statement from Mr. Golla.  Detective McWilliams found Mr. Golla sleeping or passed out
in the interview room and had to wake him.  [McWilliams Aff. ¶ 3].  Detective McWilliams
assisted Mr. Golla to his office for an interview.  Id. at ¶ 4.  While gathering preliminary
information, Mr. Golla purportedly became verbally and physically threatening, and came
across Detective McWilliam's desk with his right hand raised.  Detective McWilliams
pushed Mr. Golla onto the couch and handcuffed him.  Id.  In an attempt to calm Mr. Golla
down, Detective McWilliams brought Mrs. Golla into the office and allowed them to talk to

each other.  Although Mrs. Golla explained to him that he was a witness and was not being accused of anything, Mr. Golla remained upset and was taken back to the interview room in hopes that he would calm down.  Id. at ¶ 5.  However, Mr. Golla denies being "[un]cooperative, belligerent, and intoxicated."  [PSOF ¶ 37].  He claims he did everything that was asked of him, that he was repeatedly asked the same questions, that he was denied the right to an attorney despite numerous requests, and that he was made to go without shoes or socks for at least six hours.  Id.  Furthermore, Mr. Golla alleges that during this purported attempt to "interview" him, the officers "threw [him] against the wall and grabbed him by the throat, putting their arms around his neck, choking him and calling him curse words."  [PSOF ¶ 36].

At approximately 5:30 a.m., Mr. Golla threw a chair through a window of the interview room and crawled through the broken window.  He was immediately restrained, arrested for simple criminal damage to property, and booked into the Bossier City Jail. [PSOF ¶ 38-39; DSOF ¶ 22].  After his arrest, Mr. Golla was allowed to speak with his wife while the officers monitored the conversation.  Id. at 40.  At approximately 9:00 a.m., Mr. Golla gave a statement to the officers without incident.  [DSOF ¶ 23].  He was released around 11:30 a.m.  Id. at 25.

After her interview, Helen McDaniel was allowed to leave the police station with her pastor.  [DSOF ¶ 24].  Later that morning, Mrs. Golla was transported to the McDaniel's residence to retrieve some of her personal belongings.  She and Helen McDaniel were then transported to Willis-Knighton South to visit with Mrs. McDaniel, the deceased's spouse.  Id. at ¶ 25.  After the Bossier City Police Department released the McDaniel's

residence around 1:00 p.m., the Gollas and Helen McDaniel were transported back to the home.  Id. at ¶ 25, 26.

Daniel and Christina Golla (collectively "Plaintiffs") contend they sustained serious injuries as a result of the December 8, 2005 incident.  Mr. Golla claims his feet were cut by broken glass after he threw a chair through the window and was wrestled to the ground by Officers Hawkins and Little, that he experienced Post-Traumatic Stress Disorder, extreme anxiety, difficulty sleeping, and has been exposed to additional financial burdens due to his mother-in-law moving in after the shooting.  Similarly, Mrs. Golla claims she has experienced anxiety and depression issues, and that her familial relationships have been heavily strained given the circumstances of McDaniel's death.  [PSOF ¶ 49].

Plaintiffs filed this suit under 42 U.S.C. § 1983 to recover damages for the injuries they have allegedly sustained as a result of their constitutionally protected rights.  They contend Officer Harris, Sgt. Powell, and Officer Hawkins (with consent and approval by Lt. Wesley McGee and Chief Mike Halphen) violated Mr. Golla's constitutional rights when, without probable cause, they placed him in handcuffs, took him into custody, placed him in the rear seat of a patrol car and detained him at the Bossier City police station for at least ten (10) hours.  During this time, he claims he was coercively interrogated by Officer Hawkins, Detective McWilliams, Detective Cornell Williams, and Sgt. Jimmy Stewart, and that he was threatened, intimidated, cursed at and subjected to excessive use of force and the intentional infliction of severe physical, mental and emotional pain.  See Record Document 85, p. 3.  Plaintiffs also assert that none of the defendants ever advised Mr. Golla of his Miranda rights and ignored his numerous requests for an attorney, actions

which Mr. Golla believes were taken in an effort to discredit him and force him to say that McDaniel pointed a shotgun at Officer Harris.

Mrs. Golla contends her own constituitonal rights were violated when, over her objections, protests and cautions, Officer Harris entered the McDaniel residence and shot her brother.  Furthermore, she claims her rights were violated when, without probable cause, she was involuntarily taken into custody, separated from her husband and niece, detained at the Bossier City police station for at least three (3) hours, and subjected to coercive custodial interrogation by Officer Hawkins, Detective McWilliams, Detective Williams, and Sgt. Stewart.   In addition, Plaintiffs assert state law claims against defendants under Louisiana Civil Code Articles 2315, 2317, 2320 and other applicable provisions of law, including but not limited to unlawful arrest, assault, battery, false imprisonment, bystander recovery, and the intentional infliction of emotional distress.  Id. at p.3-4.

Defendants have filed a motion for summary judgment seeking to dismiss the Plaintiff's claims in their entirety, averring that "the multitude of claims that have been asserted against a multitude of officers are not supported by law or fact."  See Record Document 59, p.3.  Plaintiffs disagree.  See Record Document 85.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075,  Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

As a preliminary matter, the Court recognizes that plaintiffs are the sister and brother-in-law of McDaniel, the deceased victim.  To the extent plaintiffs seek to pursue a claim under 42 U.S.C. § 1983 arising from the conduct of the defendants towards McDaniel, plaintiffs lack the standing to do so.  A court must look to state law to determine the proper parties under section 1983.  See Rhyne v. Henderson County, 973 F.2d 386 (5th Cir. 1992). Louisiana law allows the "surviving brothers and sisters of the deceased" to recover only if the deceased has left "no spouse, child, or parent surviving."  La. C.C. Art. 2315.1(A)(3).   Here, McDaniel was survived by his spouse and his daughter.

Page 8 of 28

Furthermore, the statute applies only to sisters and brothers of the deceased and does not extend to sisters-in-law or brothers-in-law.   Consequently, neither Christina Golla nor Daniel Golla have standing to assert claims under section 1983 arising from conduct of the defendants towards McDaniel.   See e.g., Roberts v. City of Shreveport, 221 Fed.Appx. 314, 315 (5th Cir. 2007).

## I.      Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Because qualified immunity is "an immunity from suit rather than a mere defense to liability,... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation.   Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

In Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis.[2]   First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."   Id.   Second, if a violation has been

---

[2]In Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), the Supreme Court held that while the sequence set forth in Saucier is often appropriate, it is no longer mandatory.  Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

established, the court must then determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.  Id.; Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007).  "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.  Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005), citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all by the plainly incompetent or those who knowingly violate the law.").  The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the Court.  Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003), citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994).

### A.    Unlawful Detention

The Gollas claim they were unlawfully detained at the Bossier City police station because the officers had no reasonable basis for their detention.  Conversely, defendants deny any detention of Mrs. Golla, "as she could have elected not to cooperate and not give a statement."  See Record Document 59, p. 20.  With respect to Mr. Golla, defendants contend his detention in the garage was justified because the officers had probable cause to believe Mr. Golla was interfering with Officer Harris's official duties in violation of Louisiana Revised Statute 14:108, and that his continued detention at the police station was justified because they had probable cause to believe Mr. Golla assaulted Detective

McWilliams in violation of Louisiana Revised Statute 14:37.  See id. at 12-16.
Furthermore, defendants assert the detention was justified because the Gollas were
material witnesses from whom the officers needed to gather information pertinent to the
ongoing investigation.  See id. at 18-20.

The Fourth Amendment guarantees the right to be free from unreasonable searches
and seizures.  U.S. Const. Amend. IV.  But it is well-settled that not all encounters with the
police implicate the Fourth Amendment.  See Florida v. Bostick, 501 U.S. 429, 434, 111
S.Ct. 2382, 115 L.Ed.2d 389 (1991).  "Only when the officer, by means of physical force
or show of authority, has in some way restrained the liberty of a citizen may [a court]
conclude that a 'seizure' has occurred."  Terry v. Ohio, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868,
20 L.Ed.2d 889 (1968).  Here, the evidence viewed in light most favorable to Mrs. Golla
establishes that she was not "seized" for purposes of the Fourth Amendment.  During her
deposition, Mrs. Golla testified that she understood the crime scene investigation took a
substantial amount of time and that no one was allowed to go back to the McDaniel's
residence during that time.  [C. Golla Dep., p.224-25].  She admits she was escorted back
to the McDaniel residence and permitted to retrieve personal belongings, that she and
Helen were taken to Willis-Knighton South to visit Mrs. McDaniel, and that she never asked
to leave the police department before the investigation of the crime scene was complete.
Id. at 225-26; DSOF ¶ 25.  Because Mrs. Golla's liberty was not restrained "by means of
physical force or show of authority," her encounter with the defendants does not implicate
the Fourth Amendment.

In assessing the reasonableness of Mr. Golla's detention, "it is necessary 'first to
focus upon the governmental interest which allegedly justifies official intrusion upon the

constitutionally protected interests of the private citizen.'" Terry, 392 U.S. at 20-21, quoting

Camara v. Mun. Ct., 387 U.S. 523, 536-37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).  The

officer must be able to point to "specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant" that detention.  Id., 392 U.S. at

21, 88 S.Ct. at 1880.  The facts available to the officer at the moment of the detention,

when judged against an objective standard, must "warrant a man of reasonable caution in

the belief that the action taken was appropriate."  Id., 392 U.S. at 22, 88 S.Ct. at 1880.

Constitutional reasonableness is measured in objective terms by examining the totality of

the circumstances.  See, Ohio v. Robinette, 519 U.S. 33, 39 117 S.Ct. 417, 421, 136

L.Ed.2d 347 (1996).  It does not depend "on the actual motivations of the individual officers

involved."[3] Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89,

(1996).

        In this matter, after examining the totality of the circumstances, the Court finds that

the detention of Mr. Golla prior to his arrest for simple criminal damage to property was

reasonable. Officer Harris arrived at the McDaniel residence after being informed there was

a man threatening to kill himself and that there was a potential threat of danger to others.

When he walked into the garage, McDaniel darted across the garage to pick up a shotgun

---

        [3]While a substantial portion of both parties' memorandums describe the actions
of the individual officers and/or their alleged motivations, the Court finds these
arguments are irrelevant to the constitutional claims asserted by Plaintiffs herein.  The
"constitutional basis for objecting to intentionally discriminatory application of laws is the
Equal Protection Clause, not the Fourth Amendment."  Whren, 517 U.S. at 813.  Since
plaintiffs have not asserted any claims against defendants pursuant to the Equal
Protection Clause of the Fourteenth Amendment, it is unnecessary for the Court to
discuss the individual actions of each officer.

and point it at Officer Harris, forcing Officer Harris to use lethal force against McDaniel.[4] After the shooting, it became obvious to Officer Harris that Mr. Golla was "intoxicated and belligerent." See Harris Aff. ¶ 12; see also, Powell Aff. ¶ 7. Mr. Golla "jumped up and was yelling" and began moving towards Officer Harris. [Harris Aff. ¶ 12]. Feeling threatened by Mr. Golla's movement, Officer Harris instructed Mr. Golla to "get back," but Mr. Golla "again became agitated, screaming and cursing" at him. Id. As a result of Mr. Golla's conduct, Officer Harris was unable to perform his official duties—specifically, Officer Harris was unable to secure the scene and ensure the safety of the other individuals present, nor was he able to render aid to McDaniel and/or arrest McDaniel for aggravated assault.[5]

_____

[4]Although Daniel Golla attested to his belief that McDaniel did not retrieve a shotgun in the garage, this attestation is contrary to his prior deposition testimony wherein he indicated that he could not remember the events occurring from a couple of hours before the shooting until he heard shots fired. See D.Golla Dep., p. 59-60, 84, 91-92, 156. Furthermore, plaintiffs do not dispute the fact that a shotgun was located inside the garage. See C. Golla Dep., p.82-83 (Mrs. Golla moved the shotgun to a different location in the garage); Powell Aff., ¶ 7 (Sgt. Powell arrived at the scene to find Officer Harris with a shotgun in one hand and his service pistol in the other).

[5]Louisiana Revised Statute 14:108 provides in pertinent part:

> A.   Resisting an officer is the intentional interference with, opposition or resistence to, or obstruction of an individual in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

Thus, an officer who reasonably believes a person is interfering with his ability to perform his official duties may arrest the individual for resisting an officer pursuant to La. R.S. 14:108. See State v. Patterson, 758 So.2d 955, 960-61 (La.App. 4 Cir. 2000) (defendant's arrest pursuant to La. R.S. 14:108 was proper where defendant's actions interfered with the overall investigation and arrest of the suspects, forcing the officers to focus their attention on the defendant rather than the arrest scene, to ensure the continued safe custody of the arrested subjects and themselves).

Thus, considering the gravity of the public concern associated with the death of McDaniel, the need for immediate medical attention, and the importance of a police investigation concerning the shooting, the Court finds that Sgt. Powell and Officer Hawkins were justified in restraining Mr. Golla in handcuffs,[6] placing him in the patrol unit and escorting him to the police station to take his statement.

Furthermore, the United States Supreme Court has recognized the right to detain non-suspect material witnesses on a temporary basis.  See Illinois v. Lister, 540 U.S. 419, 427-28, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004).  In judging the reasonableness of such detentions, the Court must look to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."  Id., quoting Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).  At a minimum, officers have a right to identify witnesses, obtain the names and addresses of such witnesses, and ascertain whether they are willing to speak voluntarily with the officers.  Walker v. City of Orem, 451 F.3d 1139, 1148-49 (10th Cir. 2006), citing Hiibel v. Sixth Judicial Dist. Ct., 542 U.S. 177, 186-88, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).

Here, Mr. Golla was the only eye-witness to the shooting of McDaniel and it was necessary for the police officers to obtain his statement regarding the incident.  Because Mr. Golla was "intoxicated and belligerent," the officers were unable to obtain his statement at the scene of the incident.  In addition, the McDaniel residence and the Gollas' vehicle

---

[6]Forceful methods may be used during an investigative detention short of arrest when such methods are necessary for officer protection.  See United States v. Neff, 300 F.3d 1217, 1220 (10th Cir. 2002).

became part of an active crime scene, necessitating transportation of Mr. Golla to the Bossier City police department.

Mr. Golla acknowledges the civil obligation of citizens to cooperate with law enforcement and the duty of police to investigate claims of criminal wrongdoing, but objects to the detention's allegedly excessive duration.  Although the Court has not located any federal court precedent establishing a specific time limit for witness detention, the Court recognizes that the overall length of detention in this case (approximately 11 hours) greatly exceeds the brief detentions that have been found permissible.  See e.g., Walker, 451 F.3d at 1149 (holding that a 90-minute detention was unreasonable and not justified by either the need for investigation of a crime or control of a crime scene).  Nevertheless, the Court finds that the exceptional circumstances present in this matter would lead officers of reasonable competence to believe that a lengthy detention was warranted.  The McDaniel residence was part of an active crime scene, preventing the Gollas return to the McDaniel residence.  Even if the McDaniel residence had been released at an earlier time, Mr. Golla admitted that he was intoxicated at the time of the shooting and remained intoxicated for several hours thereafter.  See D. Golla Dep., p.47.  In fact, Detective McWilliams found Mr. Golla sleeping or passed out in the interview room and had to wake him.  [McWilliams Aff. ¶ 3].  During the interview, Mr. Golla became verbally and physically threatening, requiring further restraint to ensure the safety of the investigating officers.  Id. at ¶ 4; see also, D. Golla Dep., p. 101 (wherein Mr. Golla testified that he "was probably wild or whatever" during the interview).

Considering the sequence of events occurring that night, as well as the emotional stress experienced by the Gollas, the Court finds that the defendants are entitled to

qualified immunity for their actions.  The detention of Mr. Golla did not present a substantial interference over and above that already existing by reason of the ongoing investigation at the McDaniel residence,[7] nor was it unreasonable for defendants to detain Mr. Golla at the police station rather than return him to the scene of the shooting in an intoxicated condition.

### B.    Unlawful Arrest

To prevail on a constitutional claim of "unlawful arrest" or "wrongful arrest," a plaintiff must show that he was arrested without probable cause.  Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001).  The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).  Probable cause must be based on facts known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest.  Club Retro, 568 F.3d at 204; Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003).  However, qualified immunity shields an officer from liability "even if he 'reasonably but mistakenly concludes that probable cause is present.'"   Evett, 330 F.3d at 688, quoting Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994); see also, Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

---

[7]Importantly, the Court notes that the Gollas were transported back to the McDaniel residence immediately after the Bossier City police officers completed their investigation at the crime scene and released the residence.

(officers who "mistakenly conclude that probable cause is present" should not be held personally liable).

In this matter, to determine whether the defendants are entitled to qualified immunity, the Court must decide whether officers of reasonable competence could disagree as to whether probable cause existed to arrest Mr. Golla for the offense of simple criminal damage to property.

Louisiana Revised Statute 14:56 defines the crime of simple criminal damage to property as "the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion." During his deposition, Mr. Golla admitted to unlawfully breaking the window in the interview room of the Bossier City police department: "I thought if I broke that window I could get out. I was angry, and it was the wrong thing to do, but that's where my mind set was at that point because this was several hours into it."  See D. Golla Dep., p.105, 117.

Considering Mr. Golla's admission, it appears there are no issues of fact concerning Mr. Golla's actions in throwing the chair through the window of the Bossier City police department.  Accordingly, the Court finds that defendants had probable cause to arrest Mr. Golla for the offense of simple criminal damage to property and, therefore, defendants are entitled to qualified immunity on Mr. Golla's claim of unlawful arrest.

### C.    Excessive Force

In order to state a claim for the constitutional violation of excessive use of force, a plaintiff must establish "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable."   Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996), citing

Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993).   In gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force.   Id. at 434.

Defendants contend the Gollas' claims of excessive use of force fail because Mrs. Golla admitted no force was used against her, and because Mr. Golla experienced no more than a de minimis injury.   See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000-01, 117 L.Ed.2d 156 (1992) (wherein the Supreme Court recognized that "de minimis uses of physical forces" are insufficient to establish a constitutional violation).   The amount of injury required to prevail on an excessive force claim depends on the context in which the injury occurs.   Ikerd, 101 F.3d at 434.   The Fifth Circuit requires a plaintiff to have "suffered at least some injury."   Id., quoting Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993).   However, the Supreme Court has stated that "the extent of injury suffered by a [plaintiff] is one factor that may suggest whether the use of force" was excessive "in a particular situation."   Hudson, 503 U.S. at 7, 112 S.Ct. at 999.   Thus, the amount of injury necessary to satisfy the Fifth Circuit's requirement of "some injury" is directly related to the amount of force that is constitutionally permissible under the circumstances.

In this case, Mrs. Golla admits no police officer used physical force against her:

> Q.    Okay, ma'am, well, let me ask you a question.   Was there any force or excessive force used against you?
>
> A.    The only force was when I told the police officer, **and this wasn't physical**, but when I told him that I didn't need him to come in the door, everything is fine, and he continued to come in, and then again when I told him to wait before he came into the garage, and he came around me.

Q.      Okay.  Did any police officer use any force against your
        body?

**A.      There was no physical force.**

Q.      Did any police officer touch you?

A.      No.

Q.      Hit you?

A.      No.

Q.      Kick you?

A.      No.

Q.      Harm you?

A.      No.

[C. Golla Dep., p.40 (emphasis added)].  Thus, considering Mrs. Golla's own admissions, there are no genuine issues of material fact regarding Mrs. Golla's claim of excessive use of force and defendants are entitled to summary judgment on this claim.

Similarly, Mr. Golla admitted he suffered more than a few cuts on his feet, injuries which were incidental to his movement in or through the window that he had broken, and that he did not require medical care for any purported injuries.   [D. Golla Dep., p.108-09, 161-61].  After Mr. Golla threw the chair threw the window, he was tackled and restrained by officers located nearby, but Mr. Golla admits these officers' actions were not wrongful in any way.  Id. at 131.  Mr. Golla does contend, however, that he was pushed against the wall in Detective McWilliam's office and that such force was excessive.  Nevertheless, he admits that he was not harmed in any manner when he was pushed and that he was shoved against the wall at a time when he was "probably wild or whatever."  Id. at 101, 117.

Even if the Court were to assume *arguendo* for summary judgment purposes that Mr. Golla suffered "significant injuries" as a result of this alleged use of force, there is no evidence in the record to suggest that  such force was "objectively unreasonable" or that the officers actions were "malicious."  See Ikerd, 101 F.3d at 434; Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999) (wherein the Fifth Circuit held that "although suffering from dizziness, loss of breath, and coughing are not significant injuries, combined, they qualify as a cognizable injury when the victim is maliciously assaulted by a police officer.").  Consequently, defendants are also entitled to summary judgment on Mr. Golla's claim of excessive use of force.

### D.      Failure to Provide Miranda Warnings

The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  To safeguard the core constitutional right protected by the Self-Incrimination Clause of the Fifth Amendment, the United States Supreme Court has created certain prophylactic rules, such as the Miranda exclusionary rule.  See Chavez v. Martinez, 538 U.S. 760, 771, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003); Oregon v. Elstad, 470 U.S. 298, 306-07, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (recognizing that because the failure to administer Miranda warnings creates a presumption of compulsion, unwarned statements that are otherwise voluntary may be excluded from evidence).  However, violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person. Id., 538 U.S. at 772.  Thus, an officer's mere failure to read Miranda warnings cannot be grounds for a section 1983 action.  Id., citing Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed. 920 (1987) (Miranda's

warning requirement is "not itself required by the Fifth Amendment...but is instead justified only by reference to its prophylactic purpose"); Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (Miranda's "safeguards were not themselves protected by the Constitution but were instead measures to insure the right against compulsory self-incrimination was protected"). A constitutional violation occurs, and hence, a section 1983 claim exists, only where an individual is compelled to be a "witness against himself" in a "criminal case."  See id.

Here, the defendants did not seek or obtain any confession from Mr. Golla, nor has any confession been admitted as testimony against him in any criminal proceeding. Consequently, Mr. Golla cannot establish a violation of his Fifth Amendment right against self-incrimination.

The Court's inquiry does not end here, though, as Plaintiffs' complaints of failure to provide Miranda warnings, failure to provide an attorney, and coercive interrogation are also governed by the Due Process Clause of the Fourteenth Amendment.   The Due Process Clause of the Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  "The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).  United States Supreme Court cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); see also, Rochin v. California, 342 U.S. 165,

172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (due process is violated when officials obtain evidence through methods that "shock the conscience" or offend "a sense of justice").

Mr. Golla's contentions that he was subjected to a "coerceive interrogation" and denied the right to counsel[8] do not support a substantive due process violation.  Prior to his arrest for simple criminal damage to property, Mr. Golla was allowed to move about the police station with Officer Hylbert and visit with his wife.  He had not been arrested or charged with any criminal offenses.  In fact, his only objection to the purported "interrogation" during this time was that it was repetitious.   [D. Golla Dep., p.132]. Considering the factual circumstances presented in this case, the failure to provide Miranda warnings, failure to provide counsel, and the repetitious questioning of an intoxicated witness simply do not equate to the "egregious" or "conscience shocking" conduct which can be said to be arbitrary in a constitutional sense.  Compare Rochin, 342 U.S. 165 (forcibly pumping the defendant's stomach for evidence is conduct that "shocks the conscience"); Beecher v. Alabama, 389 U.S. 35, 88 S.Ct., 19 L.Ed.2d 35 (1967) (due process was violated where petitioner, who had already been wounded by police, was ordered at gunpoint to speak his guilt or be killed).  Accordingly, plaintiffs' substantive due process claims fail as a matter of law.

E.      Failure to Intervene

_____

[8]The Court also notes that the defendants' purported failure to provide counsel does not give rise to a Sixth Amendment violation, as the right to counsel attaches only "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  United States v. Cooper, 949 F.2d 737, 741 n.1 (5th Cir. 1991) (quoting Kirby v. Illinois, 402 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)).

An officer who is present at the scene and fails to take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983.  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995); see also, Harris v. Chanclor, 537 F.2d 203, 206 (5th Cir. 1976) (a supervisory official is liable under section 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence); Smith v. Dooley, 591 F.Supp. 1157, 1169 (W.D.La. 1984), aff'd,778 F.2d 788 (5th Cir. 1985) (deputies held liable under section 1983 where they were present at the scene but made no effort to restrain or stop the continued application of force against the suspect).  A necessary predicate to a claim of failure to intervene under section 1983 is an injury rising to the level of a constitutional violation.  See e.g., Melear v. Spears, 862 F.2d 1177, 1186 (5th Cir. 1989).

Plaintiffs allege all of the defendants present at the McDaniel residence are liable under section 1983 for their failure to intervene and take reasonable measures to protect the plaintiffs from illegal detention, illegal custodial interrogation, and excessive use of force.  See Record Document 85, p.35.  However, as the court has previously discussed, plaintiffs have failed to establish a constitutional violation for which defendants may be held liable under section 1983.  See, supra.  In the absence of a constitutional violation, plaintiffs' claims for failure to intervene also fails as a matter of law.

### F.    Conspiracy

Plaintiffs allege that "the individual defendant police officers entered into an agreement or conspiracy through which they acted . . . to deprive plaintiffs of their constitutional rights, privileges, and immunities under the Constitution and laws of the

United States and state law," for the purpose of unlawfully detaining and arresting plaintiffs, performing an illegal investigation detention or custodial interrogation, utilizing excessive force upon Mr. Golla, and intentionally inflicting emotional distress upon both plaintiffs. [First Amended Complaint, ¶ 68].  "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy is not actionable without an actual violation of section 1983.'" Hale, 45 F.3d 914, 920 (5th Cir. 1995), quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990).  To prevail on a section 1983 conspiracy claim, plaintiffs must establish (1) the existence of a conspiracy involving state action and (2) an actual deprivation of civil rights in furtherance of that conspiracy. Thompson v. Johnson, 2009 WL 3199647, *3 (5th Cir. Oct. 6, 2009); Pfannstiel, 918 F.2d at 1187.

In Hale and Pfannstiel, the Fifth Circuit held that where each state action alleged to have harmed the plaintiffs was determined to be qualifiedly immune, there was no need to determine whether a conspiracy existed to engage in those actions.  Hale, 45 F.3d at 920-21; Pfannstiel, 918 F.2d at 1187.  Similarly, in this case, the Court has already held that plaintiffs are unable to establish a constitutional violation for which defendants may be held liable under section 1983.  See, supra.  Consequently, plaintiffs' conspiracy claim is not actionable.

## II.     Municipal Liability

Plaintiffs named the City of Bossier as a defendant asserting municipal liability under 42 U.S.C. § 1983.  Specifically, Plaintiffs allege the City of Bossier "is responsible because of its knowledge, authorization, condonation, and ratification thereof, for the acts of its

officers, agents, and employees which deprived the plaintiffs of rights and privileges secured to them by the Constitution of the United States," and that such actions "were objectively unreasonable and done under circumstances demonstrating indifferent, callous, and reckless disregard for such rights."  [First Amended Complaint, ¶  60].

It is well-established that a local governmental agency cannot be held liable for the isolated unconstitutional actions of its employees or agents.  See Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); see also, Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  Instead, a local governmental agency can be held liable under section 1983 only if the plaintiff establishes (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  McGregory v. City of Jackson, – F.3d –, 2009 WL 1833958, *2 (5th Cir. 2009), citing Rivera v. Houston Index. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003).  "[A] municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration."  Richardson v. Oldham, 12 F.3d 1373, 1381-82 (5th Cir. 1994).  Furthermore, the plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Board of County Com'rs of Bryan Co. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).

Plaintiffs municipal liability claim against the City of Bossier City fails on multiple grounds.  First, plaintiffs have not identified any underlying violation of their constitutional rights.  See, supra.  As set forth previously in the Court's analysis, plaintiffs failed to demonstrate that the officers violated their clearly established constitutional rights to be free from "unreasonable searches and seizures," the right to be arrested only upon

"probable cause," the right to be free from the use of excessive force, the privilege against self-incrimination, the right to counsel, or their rights to substantive due process. Moreover, plaintiffs failed to identify any "policy or custom" that was the "moving force" behind the officers actions or demonstrate that their "injuries" were incurred as a result of such policy or custom.  Accordingly, plaintiffs' section 1983 claim against the City of Bossier fails as a matter of law.

III.   **State Law Claims**

Plaintiffs also asserts state law tort claims arising from Mr. Golla's allegations that he was unlawfully detained, arrested without probable cause, and that the officers used excessive force during his interrogation.  [First Amended Complaint, ¶ 78-79].  Under Louisiana law, the same standards are used in analyzing state law claims of unlawful detention, unlawful arrest and excessive force as constitutional claims, namely, whether the officers actions were "reasonable" under the circumstances.  See Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997); Reneau v. City of New Orleans, 2004 WL 1497711, *3-4 (E.D.La. July 2, 2004); Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977).  The Court has granted the officers' qualified immunity finding that the temporary detention of Mr. Golla in the police station was not unreasonable, that probable cause existed to arrest Mr. Golla for simple criminal damage to property, that there is no evidence that the officers' use of force was unreasonable or excessive to the need, that the alleged failure to provide Miranda warnings did not violate Mr. Golla's Fifth Amendment privilege against self-incrimination, and that the officers' actions in questioning Mr. Golla was neither "egregious" nor "conscious shocking."   Accordingly, having already found that the officers acted

reasonably under all the circumstances, plaintiffs state law claims for unlawful detention (i.e., false imprisonment), excessive use of force, and battery fail.  See id.

Moreover, to the extent plaintiffs allege a state law claim of intentional infliction of emotional distress against the defendants, the Court finds this claim to be meritless.  To prevail on a claim for intentional infliction of emotional distress under Louisiana law, a plaintiff must prove: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  Roscoe v. Hastings, 999 So.2d 1218, 1221 (La.App. 2 Cir. 2009), citing White v. Monsanto Co., 585 So.2d 1205 (La. 1991).  The record is completely devoid of any evidence demonstrating that the officers' conduct on the night of December 8, 2005 was unreasonable, much less that their conduct was "extreme and outrageous," nor is there any evidence that the officers desired to inflict severe emotional distress on the plaintiffs. In the absence of such evidence, defendants are entitled to summary judgment on plaintiffs' state law claim of intentional infliction of emotional distress.

## CONCLUSION

After careful consideration of the briefs and exhibits filed, the Court finds there are no genuine issues of material fact regarding the actions of the Bossier City police officers involved in the incident on December 8, 2005.  Finding the officers' actions were objectively reasonable under the circumstances, and that plaintiffs have failed to establish a constitutional violation for which defendants may be held liable under section 1983, defendants' motions for summary judgment [Record Document 59] shall be **GRANTED** and

plaintiffs' claims shall be **DISMISSED WITH PREJUDICE.**  A judgment consistent with the

instant memorandum ruling shall issue herewith.

      **THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of December,

2009.

                                        S. MAURICE HICKS, JR.

                             UNITED STATES DISTRICT JUDGE